# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSE YANG, | ) Case No.: 1:18-cv-00759-BAM |
| Plaintiff, | ) |
| v. | ) **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| ANDREW M. SAUL,[1] Commissioner of Social Security, | ) |
| Defendant. | ) |

## **INTRODUCTION**

Plaintiff Rose Yang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

Having considered the briefing and record in this matter, the Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.
[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). (Doc. Nos. 7, 8.)

based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

## **FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for disability insurance benefits on December 26, 2013. AR 166-71.[3] Plaintiff alleged that she became disabled on February 15, 2012, due to a back injury, right shoulder pain, major depression, anxiety, arthritis, high blood pressure, ulcer, insomnia, headache and a mental disorder. AR 186. Plaintiff's application was denied initially and on reconsideration. AR 97-99, 106-11. Subsequently, Plaintiff requested a hearing before an ALJ. ALJ Vincent A. Misenti held a hearing on December 28, 2016, and issued an order denying benefits on March 10, 2017. AR 21-37, 42-69. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### **Hearing Testimony**

The ALJ held a hearing on December 28, 2016, in Stockton, California. Plaintiff appeared with her attorney, Robert Ishikawa, and an interpreter. Impartial Vocational Expert ("VE") Jeff Beeman also appeared. AR 44.

At the outset of the hearing, the ALJ noted that Plaintiff amended her onset date to December 11, 2013. AR 45. In response to questions from the ALJ, Plaintiff testified that she lives with her daughter, son-in-law and their three children. Plaintiff has a driver's license and drives once a week. She has not attempted to work since December 11, 2013. AR 46-47.

Plaintiff confirmed that she is alleging disability due to a back disorder. She also has a problem with her right shoulder. Her back condition causes her sharp pain, which has moved to her right leg, making it difficult for her to walk. The pain happens whenever she twists or turns or pushes a chair. For treatment, she takes pain medication and uses a machine for massaging her back. When she takes medication and lies down, her pain will be a four or five out of ten. She has not had surgery and she has not been prescribed any assistive devices. However, she uses her own walking cane when she feels dizzy or wants to walk to the restroom. AR 48-49.

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

When asked about her abilities, Plaintiff testified that she can lift about four or five pounds and suffers pain when she carries a bottle of milk. She can sit for 2 hours, stand for 30 minutes and walk about 15 minutes. AR 49-50.

When asked about her right shoulder, Plaintiff testified that she cannot sleep on her right side because of "pulling." She feels a hot sensation under her shoulder and the pain goes down her arm to her right hand. She has received shots in her shoulder and is now attending physical therapy. She takes pain medication for her shoulder, which will reduce her pain to a two or three out of ten. AR 50-52.

When asked about her daily activities, Plaintiff testified that she cannot take care of the children and cannot do household chores. She spends a typical day lying down, but she will get up and walk outside for a while, before returning to lie down. AR 52.

In response to questions from her attorney, Plaintiff testified that she lies down about seven to eight times per day for one or two hours each time. She will walk for a while and then come back to sleep. When she sits for too long, she will have stabbing pain in her back, it will burn in her lower back and she will have to get up and walk. The pain goes down to her right leg, making it feel weak. She uses the cane once a month, unless the pain is more frequent. She also wears a brace on her hand because it is weak and tingling. Her doctor prescribed it. She uses it at night and sometimes as needed during the day. AR 53- 55.

Plaintiff testified that she also regularly sees a doctor for her mental health. The medication he prescribes helps her sleep and helps reduce her depression. Plaintiff reported that she cannot concentrate on anything and is very forgetful. AR 55-56.

When asked about working in the produce department of a store, Plaintiff reported that she had to carry boxes of vegetables and fruit. The vegetables weighed about 40 pounds per box and the fruit weighed about 50 to 60 pounds per box. AR 56.

When asked about other physical issues, Plaintiff testified that she is incontinent and wears a diaper. If she coughs, she loses control of her bladder. She coughs due to asthma. Plaintiff also testified that she has a stomach ulcer that causes headaches, dizziness and vomiting. AR 56-57.

Following Plaintiff's testimony, the ALJ elicited testimony from VE Jeff Beeman. The VE classified Plaintiff's past relevant work as seamstress, produce weigher, janitor/cleaner, meat clerk,

3

short-order cook, and farm worker. She also had zero education and no ESL or any language. AR 58-59. The ALJ asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume a hypothetical individual with Plaintiff's past jobs and who is not English speaking, can perform a light range of work eroded by frequent right over-the-head reaching. The VE testified that this hypothetical individual should be able to perform Plaintiff's past work as short-order cook, the produce position, sewing/seamstress and janitor as actually and generally performed in the national economy. AR 64-66.

For the second hypothetical, the ALJ asked the VE to consider an individual that could only stand or walk for four hours total and lift not more than five pounds. The VE testified that such an individual would not be employable. AR 66.

For the third hypothetical, Plaintiff's counsel asked the VE to add to the first hypothetical that the person could not understand and remember complex instructions. The VE testified that this person would be able to perform Plaintiff's past work as janitor and produce weigher. AR 67.

**Medical Record**

The relevant medical record will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 21-37. Specifically, the ALJ found that Plaintiff had not engaged in any substantial gainful activity through December 26, 2013, her application date. AR 26. The ALJ identified degenerative disc disease of the lumbar spine, obesity and right shoulder pain as severe impairments. AR 26-30. The ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 30-31. Based on a review of the entire record, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that Plaintiff was limited to frequent right overhead reaching. AR 31-36. With this RFC, the ALJ found that Plaintiff was capable of performing her past relevant work as a seamstress, produce weigher, short-order cook and janitor/cleaner. AR 36. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 37.

///

# SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

# REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Plaintiff alleges that the ALJ erred in his evaluation of Plaintiff's RFC, assessing Plaintiff's literacy in English, and in finding her mental impairments to be non-severe.

# DISCUSSION[4]

## A. The ALJ Properly Evaluated the Medical Evidence of Physical Residual Functional Capacity

### 1. Requirements of Light Work

Plaintiff argues that the ALJ improperly determined that Plaintiff retained the RFC to perform light work with a limitation to frequent right overhead reaching. (Doc. No. 13 at 9.) In so arguing, Plaintiff contends that the ALJ erred by concluding that Plaintiff could perform the full range of light work while simultaneously assigning great weight to the opinions of the state agency physicians, Drs. Rita Albright and A. Nasrabadi, both of whom limited Plaintiff to six hours of standing/walking in an eight-hour day. AR 76-77, 87-89. Plaintiff asserts that the limitation to standing/walking six hours in an eight-hour workday does not comport with the requirements of a full range of light work. (*Id.* at 10.)

Plaintiff's argument is not persuasive. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10; *Davis v. Berryhill*, 743 Fed.App'x. 846, 850 (9th Cir. 2018) (noting that "light work" entails "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday," and "[s]itting may occur intermittently during the remaining time.") (citing SSR 83-10); *Ocegueda v. Colvin*, 630 Fed.App'x. 676, 678 (9th Cir. 2015) ("Under the regulations as interpreted by the Commissioner, a 'full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.'") (citing SSR 83–10); *Holman v. Shalala*, 42 F.3d 1400 (9th Cir. 1994) (stating that light work requires six hours of standing or walking). The Court therefore finds no error in the ALJ's determination that Plaintiff could perform light work and his assignment of great weight to the opinions of the State agency physicians that Plaintiff could stand/walk six hours in an eight-hour day.

Plaintiff further argues that the ALJ's finding that she could perform her past work as a produce weigher (DOT 299.587-010), short order cook (DOT 313.374-014), and janitor/cleaner (DOT 381.687-030). Plaintiff argues error for relying on the limitation to standing/walking six hours in an eight-hour

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

workday because those occupations involve no sitting.[5] (Doc. No.13 at 10.) In other words, Plaintiff contends that because she could tolerate, at best, six hours of standing/walking in an eight-hour day, she could not perform these other occupations because these occupations do not allow for significant sitting up to two hours per day. This argument also is not persuasive.

The occupations of produce weigher, short order cook, and janitor/cleaner are all described as light work in the Dictionary of Occupational Titles ("DOT"). *See* Produce Weigher, DICOT 299.587-010, 1991 WL 672639; Cook, Short Order, DICOT 313.374-014, 1991 WL 672717; Patch Worker, DICOT 381.687-030, 1991 WL 673261 (Porters and Cleaners). A job is rated "light work" in the DOT: "(1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible." *Id.* As noted above, light work is characterized as requiring standing or walking for approximately six hours of an eight-hour workday. SSR 83-10. There is no apparent conflict between Plaintiff's past relevant work, described as light, and the DOT. Moreover, the VE testified that a person limited to "light work" could perform Plaintiff's past relevant work of produce weigher, short-order cook and janitor/cleaner, and confirmed that his testimony was consistent with the DOT. AR 64-65, 68. The ALJ properly relied on the VE's testimony to determine that Plaintiff was capable of performing her past relevant work. *See Maier v. Comm'r of Soc. Sec.*, 154 F.3d 913, 915 (9th Cir. 1998) ("The ALJ properly relied on expert testimony 'matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant'").

### 2. The ALJ Properly Discounted the Opinion of Consultative Examiner Dr. Lakshmanaraju Raju

Plaintiff next argues that the ALJ erred by rejecting the opinion of the consultative examiner, Dr. Lakshmanaraju Raju, who opined that Plaintiff could stand and walk up to four hours in an eight-hour work day. (Doc. No. 13 at 11-12.)

---

[5] Plaintiff also contends that the ALJ found Plaintiff could perform her past relevant work as a meat packager. According to the record, however, the ALJ did not find that Plaintiff could perform any past relevant work as a meat packager. Rather, the ALJ found that she was capable of performing past relevant work as a seamstress, produce weigher, short order cook, and a janitor/cleaner. AR 36.

7

Dr. Raju completed a consultative examination on May 21, 2015. AR 452-58. Plaintiff reported to Dr. Raju a history of chronic low back pain radiating down her right lower extremity and into both of her feet. She also complained of pain in the right shoulder, right wrist and hand. AR 452. On physical examination, Plaintiff did not have tenderness to palpation in the midline or paraspinal areas and only minimal tenderness over the right sacroiliac joint area on deep palpation. She had straight leg raising limited to 60 degrees on the right and 70 degrees on the left. AR 455. She had no clubbing, cyanosis or edema in her extremities, but Tinel's and Phalen's signs were positive at the right wrist. She also had good tone bilaterally with good active motion and strength of 5/5 in all extremities and her gait was normal. AR 455-57.

Following examination, Dr. Raju diagnosed Plaintiff with "[c]hronic low back pain with radiation down to the right lower extremity and soles of the feet by history, likely secondary to degenerative lumbar spinal arthritis and right sacroiliac joint arthritis." He also diagnosed her with chronic right shoulder pain and wrist pain, a history of tingling and needle sensation in the soles, chronic and continuing obesity, reflux esophagitis and apparent history of stomach ulcers. AR 457. Dr. Raju opined that Plaintiff could stand and walk up to four hours in an eight-hour work day with routine breaks, sit six hours in an eight-hour work day with routine breaks, could lift and carry five pounds occasionally with the right upper extremity and 20 pounds occasionally and 20 pounds frequently with the left upper extremity. Dr. Raju also opined that Plaintiff was incapable of performing postural activities because of her chronic low back pain, pain in the right lower extremity and tingling and needle sensation in her soles. Although she had no manipulative limitations, she reportedly was incapable of performing environmental activities because of her chronic low back pain, pain in the right lower extremity and tingling and needle sensation in her soles. AR 457.

The ALJ assigned Dr. Raju's opinion "little weight," reasoning as follows:

> Dr. Raju opined that the claimant can stand and walk up to four hours in an eight hour work day with routine breaks; sit six hours in an eight hour work day with routine breaks; lift and carry five pounds occasionally with the right upper extremity and 20 pounds occasionally and 10 pounds frequently with the left upper extremity; is incapable of performing postural activities because of her chronic low back pain, pain in the right lower extremity and tingling and needle sensation in her soles; has no manipulative limitations; is incapable of performing environmental activities because of chronic low back pain, pain

> in the right lower extremity and tingling and needle sensations in her soles (Ex 8F). However, Dr. Raju's opinion is based upon a one-time examination. Moreover, Dr. Raju provided his opinion, in part, based upon what he believed the claimant was likely suffering from, which is merely speculative. Further, Dr. Raju noted substantially normal examination findings. For example, while she had limited straight leg raising to 60 degrees on the right and 70 degrees on the left. However, she had only minimal tenderness over the right sacroiliac joint area on deep palpation, and no tenderness to palpation in the midline or paraspinal areas. Additionally, the claimant's imaging studies revealed essentially mild findings . . . . (Ex. 7F.) As such, little weight is accorded to Dr. Raju's opinion.

AR 34-35. Plaintiff asserts that the ALJ did not articulate legally sufficient reasons for rejecting the opinion evidence of Dr. Raju that Plaintiff was limited to standing/walking for four hours in an eight-hour day. (Doc. 13 at 11-13.) In evaluating the opinion of an examining physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). However, if contradicted, the opinion of an examining physician can be rejected for "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830–31. The opinion of a nonexamining physician alone is not substantial evidence that justifies the rejection of the opinion of an examining physician. *Id.* at 831.

Here, Dr. Raju's opinion that Plaintiff's ability to stand/walk was limited to four hours in an eight-hour workday was contradicted by the opinions of the state agency physicians, Drs. Albright and Nasrabadi, who opined that Plaintiff could stand or walk approximately six hours in an eight-hour day. Thus, the ALJ was required to provide specific and legitimate reasons in order to reject Dr. Raju's opinion. *Lester*, 81 F.3d at 830-31.

Plaintiff argues that the ALJ improperly rejected Dr. Raju's opinion because it was based upon a one-time examination. (Doc. No. 13 at 12.) Plaintiff is correct. Without more, the fact that Dr. Raju examined Plaintiff only once is not a specific, legitimate reason to discount that opinion. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (noting that although treating physicians are entitled to greater weight than examining physicians, the opinion of an examining physician is still entitled to greater weight than that of a nonexamining physician). Nevertheless, the ALJ's error was harmless because the ALJ provided alternative specific and legitimate reason for rejecting Dr. Raju's opinion.

For instance, the ALJ expressly discounted Dr. Raju's opinion because it was based in part upon what Dr. Raju believed the claimant was likely suffering from and was merely speculative. AR 34-35. The ALJ was entitled to discount Dr. Raju's opinion because it was based on speculation. *Longerbeam v. Astrue*, 468 F. App'x 685 (9th Cir. 2012) (finding ALJ was entitled to discount physician's opinion regarding claimant's inability to sustain work because it was based, in part, on speculation). According to the record, Dr. Raju diagnosed Plaintiff with chronic back pain as secondary to degenerative lumbar spinal arthritis and right sacroiliac joint arthritis. AR 457. However, there is no indication that Dr. Raju based this determination on a review of Plaintiff's medical records or diagnostic testing identifying lumbar spinal arthritis or joint arthritis.

The ALJ also discounted Dr. Raju's opinion because he noted "substantially normal examination findings" and Plaintiff's diagnostic imaging had essentially mild findings. AR 35. An ALJ may reject an examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole, [ ] or by objective medical findings." *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (finding that an ALJ may reject the conclusory opinion of a treating or examining physician if the opinion is unsupported by clinical findings). Although Plaintiff correctly notes that Dr. Raju found positive straight leg raising and limitations in range of motion for extension and lateral bending, the remainder of Dr. Raju's findings were relatively normal, including only minimal tenderness over the right sacroiliac joint area on deep palpation, no tenderness to palpation in the midline or paraspinal areas, no limitations in back rotation, no clubbing, cyanosis or edema in her extremities, normal range of motion in her hips, knees, and ankles, 5/5 strength in all extremities, grossly intact sensation, normal reflexes and gait within normal limits. AR 34-35, 455-57. Additionally, as the ALJ acknowledged, diagnostic imaging completed in October 2014 revealed essentially mild findings, identifying only degenerative changes in the lumbar spine and endplate spurs, but no disc herniation, spinal canal stenosis, lateral recess stenosis, neural foraminal narrowing or nerve root impingement in the lumbar spine. AR 35, 435.

///

///

///

**C. The ALJ Properly Assessed Plaintiff's Exertional and Language Limitations in Determining She Could Perform Past Relevant Work**

Plaintiff alleges that the ALJ erred in determining that she could perform the work of seamstress as actually performed because it was medium work and she was limited to light work. Plaintiff also alleges that she could not perform the work of seamstress as generally performed because she is illiterate. (Doc. No. 13 at 13-15.) The Court finds it unnecessary to reach these arguments because the ALJ also determined that Plaintiff could perform her past relevant work as a produce weigher and janitor/cleaner, both of which were light, unskilled, Level 1 jobs. AR 36.

With regard to Plaintiff's apparent illiteracy, the VE was aware of Plaintiff's English illiteracy, having attended the administrative hearing during which Plaintiff required an interpreter. Further, the ALJ expressly posited a hypothetical question to the VE that included a limitation to "not English speaking." AR 64. The VE confirmed that such an individual could perform Plaintiff's past relevant work as a produce weigher, short-order cook, and janitor/cleaner as both actually and generally performed.[6] AR 64-65, 66. Moreover, the produce weigher and janitor/cleaner jobs identified by the VE required only Level 1 language skills, which is the lowest level in the DOT and the most likely to accommodate an inability to speak English. *See Produce Weigher*, DICOT 299.587-010, 1991 WL 672639; Patch Worker, DICOT 381.687-030, 1991 WL 673261. Courts recognize that a finding that an illiterate individual is unable to do Level 1 jobs would mean that illiteracy is a per se disability under the DOT which would be illogical and conflict with the Social Security regulations. *Guerrero v. Comm'r of Soc. Sec.*, No. 1:16-CV-00573-SAB, 2017 WL 2189515, at *5 (E.D. Cal. May 18, 2017) (citing cases); *Landeros v. Astrue*, No. CV 11-7156-JPR, 2012 WL 2700384, at *5 (C.D. Cal. Jul. 6, 2012) (noting that to find that non-English-speaking claimant "could not perform her past relevant work as a factory helper because it requires level-one language development ... would be to find that every illiterate or non-English-speaking plaintiff is per se disabled regardless of their work history"); *Meza v. Astrue*, No. 09-1402, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011) (finding illiteracy not inconsistent with

---

[6] The VE also previously indicated that the prior janitor/cleaner position factored in Plaintiff's language limitation. AR 63.

1  jobs requiring level 1 language); *cf. Rivera v. Colvin*, No. CV 14-09217-KS, 2016 WL 94231, at *6-8
2  (C.D. Cal. Jan. 7, 2016) (finding no conflict between DOT and VE's testimony that person with
3  "somewhat limited ability to communicate in English" could perform jobs requiring Level 1 language
4  proficiency). For these reasons, the Court finds that the ALJ did not err in his evaluation of Plaintiff's
5  language limitations in determining she could perform past relevant work.

### C. The ALJ Did Not Err in Evaluating Plaintiff's Mental Impairment

Plaintiff alleges that the ALJ erred in rejecting the presence of a severe mental impairment at step two of the sequential evaluation, and that he erred in rejecting the opinions of Ekram Michiel, M.D. and Mark Popper, Ph.D. (Doc. No. 13 at 15; Doc. No. 18 at 6.)

At step two of the five-step analysis, the ALJ is required to determine whether a plaintiff has a "severe" medical impairment or combination of impairments. 20 C.F.R. § 416.920(c). An impairment is "severe" if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § § 416.920(c), 416.921(a). The evaluation at step two is a de minimis screening device to dispose of groundless claims. *Bowen v. Yukert*, 482 U.S. at 153–154 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001). An impairment is not severe if the evidence establishes "a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotations and citations omitted).

In determining whether a claimant's mental impairment is severe, an ALJ is required to evaluate the degree of mental limitation in four broad areas: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. If the degree of limitation in these four areas is determined to be "mild," a plaintiff's mental impairment is generally not severe, unless there is evidence indicating a more than minimal limitation in his ability to perform basic work activities. *See* 20 C.F.R. § 416.920a(c)-(d).

Here, the ALJ found that Plaintiff's medically determinable impairment of affective disorder did not cause more than minimal limitation in her ability to perform basic mental work activities and was therefore nonsevere. AR 27. The ALJ expressly considered Plaintiff's treatment notes and psychiatric evaluations and found no more than mild limitation in any of the four broad areas of mental functioning set out in the disability regulations. AR 27-30.

12

Plaintiff contends that the ALJ improperly rejected the opinions of Drs. Michiel and Popper in finding her mental impairment nonsevere. Even assuming *arguendo* that the ALJ erred by failing to find Plaintiff's mental impairment severe at step two, any such error is harmless if the ALJ properly considered and discussed Plaintiff's mental condition at step four of the sequential evaluation. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless.").

In this instance, the ALJ considered and discussed Plaintiff's mental condition at step four of the sequential evaluation. AR 34-37. At step four, the ALJ relied on the opinion of the consultative examiner, Dr. Mary Lewis, who completed a consultative psychiatric evaluation of Plaintiff on March 14, 2014, with the assistance of a certified interpreter. AR 27, 272-77. On mental status examination, Plaintiff was cooperative and pleasant, her stream of mental activity was within normal limits and her stream of consciousness was linear, logical, coherent, and goal directed. AR 273-74. Dr. Lewis did not find any significant mental impairments and determined that, from a mental health perspective, Plaintiff appeared to be able to function adequately. AR 276.

The ALJ assigned great weight to this opinion, noting that Dr. Lewis did not find any quantifiable work-related limitations and the examination results did not reflect that Plaintiff would suffer more than minimal work-related mental limitations. The ALJ acknowledged that Plaintiff's fund of information was below what would be expected, but her speech was logical, coherent and concise, and her stream of mental activity was within normal limits. AR 34. Dr. Lewis's opinion constitutes substantial evidence supporting the ALJ's finding that Plaintiff's mental impairment was nonsevere. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion alone constitutes substantial evidence because it rests on his own independent examination of the claimant).

Additionally, the ALJ accorded great weight to the opinions of the State agency psychological consultants, who opined that Plaintiff did not have any mental limitations. AR 35,74-75, 86. The opinions of non-examining physicians, like the State agency medical consultants, may serve as substantial evidence when their opinions "are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); cf. *Neugebauer v.*

*Barnhart*, 154 Fed.App'x 649, 650 (9th Cir. 2005) ("the ALJ was free to rely on non-treating agency physician reports that contained specific clinical support"). Here, as the ALJ acknowledged, the opinions of the State agency consultants were consistent with the essentially normal mental status examination findings of Dr. Lewis. AR 35-36, 74-75, 86.

The ALJ also considered the opinions of Drs. Michiel and Popper at step four of the sequential evaluation. AR 35. Dr. Michiel completed a consultative psychiatric evaluation on May 25, 2015. AR 471-74. Plaintiff reported that she was sad and depressed, but also indicated that she was able to take care of her personal hygiene, drive and help with household chores. AR 472. On mental status examination, her mood was depressed, and her affect became tearful only when speaking about her difficulty working. Her thought process was goal-directed, she was oriented to place, month and year, she was able to repeat four out of five digits forward and three backward, able to recall three out of three items immediately and after five minutes, able to do simple math calculations, but her remote memory showed some impairment and her fund of knowledge was below average. AR 472-73. Dr. Michiel diagnosed Plaintiff with an adjustment disorder with depressed mood, and opined that Plaintiff was able to maintain attention and concentration to carry out simple job instructions, was able to relate and interact with coworkers, supervisors and the general public, had no restrictions on her activities of daily living, but was unable to carry out an extensive variety of technical and/or complex instructions. AR 473-74. Dr. Michiel also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form in which he opined that Plaintiff had marked limitations in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex, work-related decisions. She also had moderate limitations in her ability to respond appropriately to work situations and to changes in a routine work setting. AR 467-69.

Because Dr. Michiel's opinion was contradicted, the ALJ was required to provide "specific and legitimate reasons" supported by substantial evidence in the record to reject it. *Lester*, 81 F.3d at 830-31. In assigning little weight to Dr. Michiel's assessment, the ALJ reasoned that his opinion appeared to rely primarily upon Plaintiff's subjective allegations. AR 35. An ALJ may reject a physician's opinion if it is based on a claimant's self-reports that have been properly discounted. *Tommassetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (noting that ALJ provided specific and legitimate reason

for rejecting physician's opinion that was essentially a rehashing of a claimant's own statements, which were undermined by the ALJ's finding that the claimant was not credible); *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (finding it reasonable to discount physician's opinion that was based on claimant's less than credible statements); *Calkins v. Astrue*, 384 Fed.App'x 613, 615 (9th Cir. 2010) (concluding that "an ALJ must be permitted to discount an opinion based principally upon a claimant's self-reporting if the record contains objective evidence that the self-reporting is not credible"). Here, the ALJ discounted Plaintiff's subjective complaints and Plaintiff has not otherwise challenged the ALJ's evaluation of those complaints. Although Plaintiff asserts that no evidence suggests that Dr. Michiel relied primarily on Plaintiff's subjective allegations, Dr. Michiel's mental status examination identified few objective findings and his diagnosis of depressed mood appeared based on Plaintiff's own report that she was sad and depressed. AR 471. While some deficits were noted, such as in orientation and attention and concentration, Plaintiff had no difficulty with immediate recall, and had only some impairment with remote memory. She also was able to complete daily activities, including taking care of her personal hygiene, driving and helping with household chores. AR 35, 472.

Additionally, the ALJ discounted Dr. Michiel's limitations as not supported by the medical record as a whole. AR 35. An ALJ may permissibly reject a medical opinion of a non-treating examining physician that is unsupported by the record as a whole. See 20 C.F.R. § 416.927(c)(4) ("[g]enerally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Batson*, 359 F.3d at 1195; *Mendoza v. Astrue*, 371 Fed. Appx. 829, 831–32 (9th Cir. 2010) ("The ALJ permissibly rejected a medical opinion of a non-treating examining physician that was unsupported by the record as a whole.") (citation omitted). Here, the ALJ considered in his evaluation that Plaintiff's reported mental symptoms stemmed primarily from her physical impairments, not a mental impairment. AR 35. This finding is supported by Dr. Michiel's own report, which notes that Plaintiff became tearful when talking about her difficulty working and that her reports of uselessness and worthlessness were tied to thinking about her financial issues and how she would live with her constant pain. AR 28, 471-72. Further, the ALJ completed a comprehensive summary of Plaintiff's treatment notes, which also corroborated the ALJ's determination, confirmed by the State agency physicians, that Plaintiff's mental

symptoms appeared to be primarily due to reported medical concerns (which the ALJ found not disabling). AR 27-29, 86. For instance, treatment notes from 2014 and 2015 reflected that Plaintiff continued to discuss worries and concerns regarding her medical health and pain, regularly reporting on her somatic symptoms. AR 27, 539-41, 542 (Plaintiff's "complexities of pain have become the center of her focus"), 543 (endorsed feelings of sadness, hopelessness, helplessness, and loneliness pertaining to her medical illnesses), 544-47, 548 ("Plaintiff continues to grieve over her medical problems."), 549 (Plaintiff presented with increased somatic pains), 550 ("Plaintiff reported with feelings of hopelessness and helplessness due to her medical problems;" "Plaintiff reported with feelings of distress regarding medical issues, financial and living condition."), 551-52 (distress regarding health and financial issues), 553-75, 577-83 (discussed somatic symptoms; multiple reports of feelings of helplessness, hopelessness, worthlessness, forgetfulness and sadness regarding "her somatic symptoms"). Additionally, during treatment in 2016, Plaintiff's primary mental symptoms related to her pain and physical condition. AR 28; *see*, *e.g.*, 501 (reported experiencing pain and described having a weak body; "Patient feels hopeless as she has been having a hard time … from past stroke"), 502 ("Patient expressed concerns about medical illness" and reported feeling sad, lonely, helpless, hopeless and frustrated regarding her life situation), 503 ("Plaintiff reported having difficulty sleeping due to medical pain;" "complaint the hardship of managing her health problems and health services"; "she was … feeling helpless about her physical inability."), 504 ("Patient reported feeling frustrated, irritated, and helpless regarding her somatic pain…"), 505-10, 512, 514-29, 531-37 (reported on physical issues and somatic pain, difficulty functioning due to pain), 511 ("exhibited feelings of sadness, helplessness, and worthlessness regarding her medical condition"), 513 ("stated feeling helpless, frustrated, sad, and angry regarding her medical issues").

Furthermore, even if Plaintiff was limited to simple job instructions as expressed in Dr. Michiel's consultative evaluation report, such a limitation does not negate the validity of the ALJ's ultimate conclusion that Plaintiff could perform her past relevant work as a produce weigher or janitor/cleaner, both of which require only Level 1 reasoning. *See* Produce Weigher, DICOT 299.587-010, 1991 WL 672639; *Patch Worker*, DICOT 381.687-030, 1991 WL 673261 (Porters and Cleaners); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (noting error is harmless where it "does not negate the

validity of the ALJ's ultimate conclusion."). Courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two. *See Xiong v. Comm'r of Soc. Sec.*, No. 1:09-CV-00398-SMS, 2010 WL 2902508, at *6 (E.D. Cal. July 22, 2010) (collecting cases). The VE also confirmed that person with Plaintiff's RFC who could not understand and remember complex instructions would be able to perform Plaintiff's past work as janitor and produce weigher. AR 67.

Similarly, the ALJ assigned little weight to the more extreme limitations identified by Dr. Popper. AR 35. In December 2016, Dr. Popper completed a Mental Disorder Questionnaire Form in which he identified Plaintiff's diagnoses as Major Depressive Disorder, Severe with Psychotic Features, Posttraumatic Stress Disorder, Chronic, and Generalized Anxiety Disorder. AR 588. Dr. Popper opined that Plaintiff struggled interacting and communicating effectively with others, especially with authority figures, she had difficulty focusing and following and understanding simple written/oral instructions due to her poor concentration, loss of short-term memory, and forgetfulness. AR 587. She also had difficulty adapting to changes, low frustration tolerance, and poor decision-making ability. *Id.*

As with the opinion of Dr. Michiel, the ALJ afforded less weight to Dr. Popper's opinion because it relied primarily on Plaintiff's subjective allegations. AR 35. For the same reasons discussed above, this is a specific and legitimate reason to discount Dr. Popper's opinion. *Tommassetti*, 533 F.3d at 1041; *Bray*, 554 F.3d at 1228; *Calkins*, 384 Fed. App'x at 615. The ALJ also discounted Dr. Popper's opinion because it was not supported by the record as a whole. AR 35. This, too, is a specific and legitimate reason to discount Dr. Popper's opinion. *See* 20 C.F.R. § 416.927(c)(4); *Batson*, 359 F.3d at 1195; *Mendoza*, 371 Fed. Appx. at 831–32 (9th Cir. 2010) Indeed, consistent with the discussion above, Dr. Popper's treatment records reflected that Plaintiff's mental symptoms stemmed primarily from her physical impairments and perceived physical limitations. AR 501-83.

Plaintiff also asserts that the ALJ failed to consider the findings of Dr. Phua Xiong, which were consistent with those of Dr. Popper, and such failure was error. (Doc. No. 13 at 6, 17.) The Court disagrees. According to the record, in September 2013, Dr. Xiong indicated that Plaintiff had a "depressed mood . . . and . . . diminished interest in her usual daily activities. Positive alarm features for depression include psychomotor retarding, fatigue (loss of energy), feelings of worthlessness (guilt),

and impaired concentration (indecisiveness)." AR 259. Dr. Xiong made similar notes in January and April 2013. AR 263, 267. In October 2013, Dr. Xiong indicated that Plaintiff was "depressed due to inability to work due to back pain." AR 256. Contrary to Plaintiff's assertion, the ALJ did not fail to consider Dr. Xiong's treatment records. Instead, in evaluating whether Plaintiff's mental impairment was severe, the ALJ acknowledged that Dr. Xiong's treatment records revealed that Plaintiff was prescribed medication for a depressive disorder, but that those records were from the time period prior to her disability application date and prior to her amended onset date. AR 27, 46.

Based on the above, the Court finds that the ALJ did not err in his evaluation of Plaintiff's mental impairment. Further, it is the ALJ's duty to resolve conflicts in the evidence, including conflicting medical evidence from examining and treating physicians. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir.2003) (noting that ALJ may reject the opinion of a treating physician in favor of the conflicting opinions of an examining physician). The Court must affirm the ALJ's decision even where the evidence is susceptible to more than one rational interpretation. *Molina*, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Andrew M. Saul, Commissioner of Social Security, and against Plaintiff Rose Yang.

IT IS SO ORDERED.

Dated: **September 13, 2019**　　　　　/s/ *Barbara A. McAuliffe*
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE